UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-60729-CIV-MARRA/JOHNSON

JUDITH GUNZBURGER,

    Plaintiff,

v.

AL LAMBERTI,
as Sheriff of Broward County, Florida,

    Defendant.
_____/

## ORDER AND OPINION

THIS CAUSE came before the Court on Defendant Al Lamberti, as Sheriff of Broward County, Florida, ("Defendant" or "BSO")'s Motion for Summary Judgment (DE 14), filed April 17, 2009, and Plaintiff Judith Gunzburger's ("Plaintiff" or "Gunzburger") Cross-Motion for Partial Summary Judgment (DE 21), filed May 18, 2009. The motions are briefed and ripe for review. The Court has reviewed the motions, responses, and replies where filed, the entire file in this case, and is otherwise duly advised in the premises.

**Background**

Plaintiff, a former employee of Defendant, filed a one-count Complaint against Defendant for interfering with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") (See Compl., DE 1). The Complaint states, in pertinent part, as follows: "The Defendant violated FMLA and interfered with Plaintiff's rights under FMLA when it terminated Plaintiff on January 31, 2008." Compl. ¶ 19. Plaintiff claims that Defendant interfered with her

1

rights for discharging her while she was on FMLA leave. See Compl. ¶¶ 13-16.

**Material Facts**

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

1. Plaintiff was hired by Defendant on July 25, 2005 as a Detention Program Specialist. Compl. ¶ 6.

2. On March 3, 2007, Plaintiff was promoted to the position of Child Investigation Specialist. Compl. ¶ 7.  This position called for a probationary period lasting one year from the date of the promotion. Gunzburger Dep. at 8:1-4, 21-23.

3. On October 23, 2007, Defendant completed Plaintiff's six month review. (DE 15-2; Exh. 8).  Plaintiff received an over-all score of 2.8 out of 5.  Id.

4. On November 6, 2007, Plaintiff first saw Dr. Weinstein. (DE 15-2, Exh. 3).

5. On or about November 13, 2007, Plaintiff was admitted to Memorial Regional Hospital South due to left-sided rib and flank and chest pain and numbness in the left upper extremity.  Compl. ¶ 8.

5. From approximately November 12-14, 2007, Plaintiff was hospitalized at Memorial. (DE 15-2; Exh. 3).

6. After being hospitalized for approximately two days, Plaintiff was discharged from Memorial. Gunzburger Dep. at 14:15-16.

7. Plaintiff was diagnosed with cytomegalovirus ("CMV") with low grade fever. Pl. Dep. at 13:1-3.

8. Dr. Morton Weinstein, M.D., treated Plaintiff for CMV since November 20, 2007. Gunzburger Dec. at ¶ 2.

9. Plaintiff's symptoms included extreme fatigue, extreme lethargy, sore throat, increase in migraines and light sensitivity, and fevers. Gunzburger Dep. at 53:19-24.

10. In describing her restrictions in her daily life activities, Plaintiff stated:

> Basically I didn't feel up to doing anything since I was so tired. I didn't feel - - with the fever I was miserable, plain and simple.
> It is just like staying home you need to rest. This is the only way to work it out is rest and sleep and take Tylenol. Do what you need to do, you know, it will go through you basically. It is not like I – like I didn't have control, which really sucked.

Gunzburger Dep. at 53:19-24.

11. Plaintiff's physician, Dr. Weinstein, suggested Tylenol and sleep as treatment for Plaintiff's symptoms. Gunzburger Dep. at 54:12-18.

12. Plaintiff was absent from work from November 12, 2007 through January 31, 2008. Gunzburger Dep. at 21:5-9.

13. During Plaintiff's absence from work, Plaintiff's close friend Angela Wagoner ("Wagoner") from Louisiana came to visit Plaintiff from December 19, 2007 through January 2, 2008. Wagoner Dep. at 5:5-11.

14. During this time period, Plaintiff and Wagoner went sightseeing around the Hollywood and Fort Lauderdale areas. Wagoner and Plaintiff went to restaurants, the "broadwalk," a few art events, and traveled to Miami to look at the shops and restaurants there. Wagoner Dep. at 7:5-24. Plaintiff was able to engage in these activities for "short periods" and would have to go back home and lay down and rest. Id. at 8:1-3.

15. On November 29, 2007, Dr. Weinstein submitted a BSO form entitled "Return to

3

Work Authorization Form," stating that Plaintiff was under his care on "11/08/2007 - cont." (DE 15-2; Exh. 2). The anticipated return to full duty status section was left blank. See id.

16. In November or December of 2007, Plaintiff personally submitted to BSO's Human Resource Department a document signed by Dr. Weinstein. Gunzburger Dep. at 17-19; Gunzburger Dec. at ¶ 8; Wagoner Dec. at ¶ 2. The record is not clear whether this form was the "Return to Work Authorization Form" that Dr. Weinstein signed on November 29, 2007, or some other form that is not in the record. See DE 15-2; Exh. 2; Gunzburger Dep. at 15-19.

17. On January 4, 2008, Dr. Weinstein filled out and signed an application form for Standard Insurance Company's ("Standard") short term disability ("STD") benefits, entitled "Disability Insurance; Attending Physician's Statement" (DE 15-2; Exh. 3).

18. On January 7, 2008, Plaintiff applied for STD benefits. See id.

19. Standard is a independent private insurance company separate from BSO. BSO makes Standard's STD insurance available to BSO employees at the employees' option and sole expense. Employees have the option of contributing to Standard's STD insurance program on a voluntary basis. See DE 15-2; Exh. 3; see Affidavit of Elizabeth Parker, DE 15-2; Exh. 4.

20. On January 7, 2008, Plaintiff's termination form was prepared, stating that Plaintiff would be terminated for "[f]ailure to meet probationary standards." DE 15-2; Exh. 11.

21. On January 14, 200, Standard approved Plaintiff's STD benefits and Plaintiff began receiving payments the following day. Standard has its own application procedures for disability insurance and makes its own eligibility determinations. BSO has no review or oversight of Standard's determination or criteria. BSO received a copy of the approval letter from Standard on January 22, 2008. See DE 15-2; Exh. 3-4.

22. Under Sheriff's Policy Manual ("SPM") 4.3.23(D)(7), BSO requires employees on leave due to a serious health condition to submit a medical certification form issued by a health care provider.  See DE 15-2; Exh. 5.

23. Employees at BSO are required to be familiar with, and abide by, the Policy Manual. Gunzburger Dep. at 10:18-23.

24. Sometime in mid-January, approximately between January 9-17, Gwen Davis of BSO notified Plaintiff that BSO still had not received an FMLA leave request from her. Gunzburger Dep. at 21-22.

25. On January 22, 2008, Dr. Weinstein completed BSO's Medical Certification Form for FMLA for Plaintiff. See DE 15-2; Exh. 6.  On that form, Dr. Weinstein certified that Plaintiff did not have a "serious health condition" that qualified her under the Family Medical Leave Act. Id.

26. Plaintiff never saw Dr. Weinstein's form prior to her termination. See Gunzburger Dec. ¶ 12.

27. On January 24, 2008, Plaintiff submitted BSO's FMLA Request Form and her FMLA Medical Certification Form.  DE 15-2; Exh. 6,7; Parker Dec. at ¶ 6 (DE 15-2, Exh.4).

28. On that same day, January 24, 2008, BSO Benefits Manager Elizabeth Parker ("Parker") denied Plaintiff's FMLA request wholly based upon Plaintiff's Medical Certification Form, wherein Plaintiff's physician determined that Plaintiff did not have a serious health condition. See DE 15-2; Exh. 7; DE 15-2; Exh. 4 at ¶ 7-8.

29. Parker did not make an independent determination of whether Plaintiff had a serious health condition qualifying her for FMLA. See id. at ¶ 7.  Parker only reviewed the submitted

5

FMLA forms. See id.  She was not aware that Plaintiff had filed for, and was receiving, STD benefits from Standard. See id. at ¶ 7-8.

30. After Plaintiff's FMLA request was denied on January 24, 2008, Plaintiff did not submit any additional medical records or documentation to BSO in support of her FMLA request, nor did she contact anyone at BSO regarding the denial of her FMLA request. Gunzburger Dep. at 48:5-13.

31. Plaintiff never provided BSO with an estimate of how much leave she would need or an anticipated return to work date. Gunzburger Dep. at 75:24-25; 76:10-13.

32. Plaintiff was never told she could submit new information.  Gunzburger Dep. at 48:5-13.

33. On January 31, 2008, Plaintiff was terminated. See DE 15-2; Exh. 11.  The termination form states that she was terminated for "[f]ailure to meet probationary standards." Id.

**Standard of Review**

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608

(11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir.1989).

**Discussion**

Pursuant to the FMLA, an eligible employee is entitled to up to twelve workweeks of leave in a given year because "of a serious health condition that makes the employee unable to

perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1).  It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" that right. 9 U.S.C. § 2615(a).  The Eleventh Circuit has recognized that § 2615(a) creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal citations omitted).  To state a FMLA interference claim, a plaintiff must demonstrate by a preponderance of the evidence that he was entitled, under the FMLA, to a benefit that was denied. Strickland v. Waterworks and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001); Drago v. Jenne, 453 F.3d 1301, 1306 (11th Cir. 2006).  In addition to establishing liability, a plaintiff must establish that he has "been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation ...' " Ragsdale v. Wolverine Worldwide Inc., 535 U.S. 81, 89 (2002) (quoting 29 U.S.C. § 2617(a)(1)(A)(i)(II)).

     Here, Plaintiff filed suit against Defendant for interfering with her FMLA rights when it terminated her on January 31, 2008.  Defendant maintains that Plaintiff cannot establish that she was entitled to, nor denied, an FMLA benefit.  After reviewing the summary judgment motions and attached exhibits, the Court concludes that there are no genuine issues of material fact precluding summary judgment and that Plaintiff was not denied any benefit guaranteed to her by the FMLA.

     As the Eleventh Circuit held in Cash v. Smith, 231 F.3d 1301 (11th Cir. 2000), "not all

leave requested or taken for medical reasons qualifies for the FMLA's protections." Accordingly, "employers have a statutory right to require an employee requesting FMLA leave to obtain certification that attests to the employee's eligibility for such leave from a health care provider." Id.; see 29 U.S.C. § 2613(a).[1]  "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b).  However, "[i]n the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave." 29 C.F.R. § 825.302(c).  In Cash, the Eleventh Circuit affirmed summary judgment for the employer where, as here, the employer properly requested that plaintiff's medical provider complete the company's standard FMLA certification form and the physician indicated on the form that plaintiff did not qualify for FMLA leave:

> In this case, Cash has failed to present evidence that she exercised a protected right under the FMLA. APCO requested that Cash have her doctor complete the company's standard FMLA certification form, and Cash's personal physician indicated on the form that Cash did not qualify for FMLA leave because her conditions were being controlled by medication, and she was able to perform the functions of her position. Cash did not provide APCO with certification that her medical conditions met the statutory standard, and therefore the medical leave that she did take was not under the auspices of the FMLA. The district court correctly granted APCO's motion for summary judgment on the FMLA count.

Cash v. Smith, 231 F.3d at 1307.  Here, just as in Cash, the Court finds that because Plaintiff did

---

[1]An employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, or of the next of kin of an individual in the case of leave taken under such paragraph (3), as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

not provide Defendant with the certification that her medical conditions qualified for FMLA leave, the medical leave that Plaintiff took was not under the auspices of the FMLA.

The case law does not support Plaintiff's position that, in reviewing Plaintiff's FMLA request form and medical certification stating that Plaintiff's condition does not qualify for FMLA leave, the employer has the burden to search through past forms which are not FMLA requests, including third-party STD forms, to ensure that they are consistent with the medical certification.[2]  In fact, if the requested certification indicates that the leave is not FMLA-qualifying, the employer must not designate it as FMLA leave. Stoops v. One Call Communications, Inc., 141 F.3d 309, 1312 (7th Cir. 1998).

> Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence. And that medical evidence should come from the employee in time to save his job, not during a subsequent law suit.

Stoops, 141 F.3d at 1314.  Where a plaintiff does not obtain a medical opinion to contradict a physician's certification that his leave does not qualify under FMLA, plaintiff's FMLA claim fails. Id. at 1313.  See also Curry v. Neumann, 2000 WL 1763842, *4 (S.D. Fla. 2000) (where "the certifications [plaintiff] ultimately produced were deficient," there is no triable issue of fact and defendant is entitled to summary judgment.

---

[2] Additionally, Plaintiff's vague and unsubstantiated statement regarding a document she may have submitted earlier does not create a genuine issue of fast as to whether she previously applied for FMLA leave.  Plaintiff has not come forward with anything other than supposition and conjecture to refute Defendant's position that the form that Plaintiff had submitted previously was a Return to Work Authorization form. See DE 15-2 Exh. 2.  Moreover, even if she had submitted a prior FMLA request, there is no evidence that it was supported by a medical certification that her condition qualified for FMLA leave.

Furthermore, an employee taking FMLA leave must give his employer notice of the probable duration of the condition requiring the leave. 29 U.S.C. § 2613(b)(2); 29 C.F.R. § 825.302(c). See Drago, 453 F.3d at 1306 ("[T]he statute itself contemplates that an employee must give an employer notice of the anticipated duration of the employee's absence."); Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1383 (11th Cir. 2005) ("[T]he notice must be 'sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."); Billups v. Tampa Sports Authority, 2007 WL 4093232, *6 (M.D. Fla. 2007). Here, it is undisputed that Plaintiff never provided Defendant with an estimate of how much leave she would need or an approximate date of when she was going to return to work.

Based on the foregoing, the Court concludes that Plaintiff has failed to present evidence that she exercised a protected right under FMLA, thus defeating her FMLA interference claim. Accordingly, Defendant is entitled to final summary judgment in its favor.

**Conclusion**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (DE 14) is **GRANTED.**

(2) Plaintiff's Cross-Motion for Partial Summary Judgment (DE 21) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of July, 2009.

_____
KENNETH A. MARRA
United States District Court

Copies furnished to:
all counsel of record